IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

SEP 1 3 2006

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

DALLAS MIZE,

        Plaintiff,

v.

HJC CORP.,

        Defendant.

CIVIL ACTION NO.
1:03-CV-2397-JEC

## O R D E R

This case is presently before the Court on defendant's Renewed Motion for Summary Judgment [101]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's Renewed Motion for Summary Judgment [101] should be **GRANTED**.

### BACKGROUND

This products liability case arises out of a motorcycle accident plaintiff had while wearing a helmet designed and manufactured by defendant HJC Corporation ("HJC"). The facts surrounding plaintiff's accident are described in detail in the Court's previous summary judgment order. (See Order [95].) The Court briefly summarizes the

relevant facts below.[1]

On December 14, 2001, plaintiff took his friend Layne Grantham's new motorcycle for a short ride. (SMF at ¶ 1.) After riding 2-3 miles through Grantham's neighborhood, plaintiff rode back past Grantham's driveway, waved, and shouted "Hey" to Grantham and other friends. (Id. at ¶¶ 9-10.) Apparently, when plaintiff shouted "Hey," the helmet he was wearing fogged, obscuring plaintiff's vision. (Id. at ¶ 11.) Because plaintiff could not see through the fogged helmet, he failed to make a gradual left-banking downhill turn and ran off the road and into a ditch. (Id.) Plaintiff was seriously injured in the ensuing accident. (Id. at ¶ 13.)

At the time of the accident, plaintiff was wearing an HJC CL-12 full--face helmet ("CL-12 Helmet"). (SMF at ¶ 4.) The CL-12 Helmet incorporates several features designed to minimize the risk of fogging. (Id. at ¶¶ 5-7.) Its face-shield is retractable, allowing

---

[1] Unless otherwise noted, the Court draws the undisputed facts from Defendants' Statement of Material Facts ("SMF") [101] and Plaintiff's Second Statement of Material Facts ("PSMF") [102]. When plaintiff has disputed a specific fact and pointed to evidence in the record that supports his version of events, the Court has viewed all evidence and factual inferences in the light most favorable to plaintiff, as required on a defendant's motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *McCabe v. Sharrett*, 12 F.3d 1558, 1560 (11th Cir. 1994); *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 469 (11th Cir. 1993). When the Court could discern a material factual dispute from this pleading, the Court has made all inferences in a light most favorable to plaintiff.

the wearer to open and close the shield by using a lift-tab on its left lower edge, and thereby eliminate any condensation in the helmet. (*Id.* at ¶ 5.) The CL-12 Helmet also has four adjustable air-intake vents and two exhaust vents, as well as a breath-deflector designed to deflect the wearer's breath away from the shield interior. (*Id.* at ¶¶ 5, 7.) The vents and breath-deflector allow the wearer to maintain a comfortable helmet temperature and control face-shield condensation by adjusting airflow through the helmet.[2] (*Id.* at ¶ 7.) For purposes of this motion, the parties agree that, in spite of these features, the CL-12 Helmet plaintiff was wearing on December 14, 2001 fogged, causing his accident and subsequent injury.

In August, 2003, plaintiff filed this suit against HJC, the company that manufactured the helmet, and HJCA, the company that marketed the helmet. (SMF at ¶ 14.) In his Complaint, plaintiff asserted claims for strict liability under Georgia's product liability statute, O.C.G.A. § 51-1-11. (*Id.*) Specifically, plaintiff alleged that the CL-12 Helmet was defectively designed, and that this defect caused his accident and resulting injury. (*Id.*) Plaintiff sought to recover compensatory and punitive damages. (*Id.*)

After discovery, defendants filed a motion for partial summary

---

[2] It is undisputed that plaintiff did not adjust the vents to minimize the risk of fogging, and that once the fogging occurred, he did not use the lift tab to raise the face shield. (Pl.'s Dep. at 28, 36, 49-50.)

3

judgment and a *Daubert* motion to exclude plaintiff's expert witness, Stan Johnson. (Defs.' Mot. for Summ. J. [55]; Defs.' Mot. to Exclude Testimony of Stan Johnson [78].) The Court granted both motions, dismissing HJCA as a party, granting summary judgment to HJC on plaintiff's claim for punitive damages, and excluding the testimony of Stan Johnson. (Order [95].)

Defendant HJC has now filed a renewed motion for summary judgment on plaintiff's design defect claim. (Def.'s Renewed Mot. for Summ. J. [101].) Defendant contends that without Johnson's testimony, plaintiff's design defect claim fails as a matter of law. (Def.'s Renewed Mot. for Summ. J. [101].) This motion is presently before the Court.

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure *mandates* the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an

4

essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.* at 322-23.

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323; *Apcoa, Inc. v. Fidelity Nat'l Bank*, 906 F.2d 610, 611 (11th Cir. 1990). The movant is not required to negate his opponent's claim, however. The movant may discharge his burden by merely "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. After the movant has carried his burden, the nonmoving party is then required to "go beyond the pleadings" and present competent evidence[3] designating "'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting FED. R. CIV. P. 56(e)). While the court is to view all evidence and factual inferences in a light most favorable to the nonmoving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). .

---

[3] The nonmoving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. *Celotex*, 477 U.S. at 324.

A fact is material when it is identified as such by the controlling substantive law. *Id.* at 248. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249-50. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson*, 477 U.S. at 249-50. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of *every* element material to that party's case so as to create a genuine issue for trial.

## II. PLAINTIFF'S DESIGN DEFECT CLAIM

Plaintiff alleges that the CL-12 Helmet is defective because of its failure to incorporate additional features to: 1) minimize the risk of fogging and 2) allow the wearer to quickly eliminate condensation from the helmet. . (Pl.'s Resp. [102] at 2.) In order to prevail on his design defect claim, plaintiff must prove that: 1) the CL-12 Helmet was defective; and 2) the defect was the proximate cause of plaintiff's injury. *SK Hand Tool Corp. v. Lowman*, 223 Ga.

App. 712, 714, 479 S.E. 2d 103, 106 (1996).[4] *See also, Jones v. NordicTrack, Inc.*, 274 Ga. 115, 117, 550 S.E. 2d 101, 103 (2001)(noting that plaintiff "must show that the product is defective" to maintain a design defect claim under Georgia law).

Georgia applies a risk-utility analysis to determine whether a product is defective. *Banks v. ICI Americas, Inc.*, 264 Ga. 732, 450 S.E.2d 671 (1994); *Ogletree v. Navistar Int'l Transp. Corp.*, 271 Ga. 644, 645, 522 S.E.2d 467 (1999)). As the court explained in *Banks*:

> [t]his risk--utility analysis incorporates the concept of 'reasonableness,' i.e., whether the manufacturer acted reasonably in choosing a particular product design, given the probability and seriousness of the risk posed by the design, the usefulness of the product in that condition, and the burden on the manufacturer to take the necessary steps to eliminate the risk. When a jury decides that the risk of harm outweighs the utility of a particular design (that the product is not as safe as it should be), it is saying that in choosing the particular design and cost trade-offs, the manufacturer exposed the consumer to greater risk of danger than he should have.

*Banks*, 264 Ga. at 734, 450 S.E.2d at 673. Under the risk-utility test, a product has a design defect when "the risks inherent in a product design" outweigh "the utility of the product so designed." *Id.* at 735, 450 S.E.2d at 674.

The essential inquiry under the risk-utility analysis is "whether the design chosen [by the manufacturer] was a reasonable one

---

[4] The parties agree that Georgia law applies to this case. (*See generally,* Def.'s Renewed Mot. for Summ. J. [101] and Pl.'s Resp. [102].)

7

from among the feasible choices of which the manufacturer was aware or should have been aware." *Id.* at 736, 450 S.E.2d at 674. Evidence of the availability of alternative designs is particularly important to the inquiry, "in that the existence and feasibility of a safer and equally efficacious design diminishes the justification for using a challenged design." *Id.* at 735, 450 S.E.2d at 674. Indeed, the *Banks* court described the availability of feasible alternative designs as "the 'heart' of [a] design defect case." *Id.* at 736, 450 S.E.2d at 674. See also, *Jones,* 274 Ga. at 118, 550 S.E.2d at 103 ("The 'heart' of a design defect case is the reasonableness of selecting among alternative product designs and adopting the safest feasible one."). Other factors may also be relevant, including: "the usefulness of the product; the gravity and severity of the danger posed by the design; the likelihood of that danger; the avoidability of the danger; . . . and the ability to eliminate danger without impairing the usefulness of the product or making it too expensive." *Banks,* 264 Ga. at 736, 450 S.E.2d at 675.

Plaintiff's expert, Stan Johnson, opined that the CL-12 Helmet was defective because of its propensity to fog and the difficulty of eliminating condensation from the helmet during a fogging incident. (Johnson Report, attached to Pl.'s Resp. to Defs.' Mot. for Summ. J. [57] at Ex. I.) In his report, Johnson suggested various alternative designs to address the fogging problem. (*Id.*) As noted, however,

8

the Court has granted defendant's *Daubert* motion to exclude Johnson's testimony.[5] (*See* Order [95].) In the absence of Johnson's testimony, there is no evidence in the record to raise a genuine issue of fact on any of the *Banks* factors, and no basis upon which a reasonable jury could conclude that the CL-12 Helmet is defective. Accordingly, defendant is entitled to summary judgment on plaintiff's design defect claim.

Plaintiff's argument that this case is so simple that no expert testimony is necessary to show a defect is unpersuasive. Plaintiff may be correct that expert testimony is not always required to maintain a products liability case under Georgia law. (Pl.'s Resp. [102] at 2.) *See SK Hand Tool Corp.*, 223 Ga. App. at 715, 479 S.E. 2d at 107 (suggesting that expert testimony is not necessary in every products liability case). As a practical matter, however, expert testimony is often required to measure the "gravity and severity of the danger" posed by a product, the likelihood of that danger, and whether there are feasible alternative designs that would eliminate the danger "without impairing the usefulness of the product or making it too expensive." *Banks*, 264 Ga. at 736, 450 S.E.2d at 675. In other words, expert testimony is frequently necessary to apply the

---

[5] The Court found that Johnson's opinions were not based on a discernible methodology and that his conclusions were not reliable. (Order [95] at 20-24.)

*Banks* factors. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1320 (11th Cir. 1999)(applying Georgia products liability law, granting summary judgment to defendant after excluding plaintiff's expert witnesses) and *Little v. NCR Corp.*, 1995 WL 929019 * 16 (N.D. Ga. 1995)(Hull, J.)(applying Georgia products liability law, granting summary judgment to defendant after granting defendants *Daubert* motion).

This case is no exception.[6] The parties do not dispute that the CL-12 Helmet fogged while plaintiff was wearing it, causing plaintiff's accident. Plaintiff is therefore correct that "[e]xpert testimony is not necessary to link the fogging and the accident." (Pl.'s Resp. at 12.) Without expert testimony, however, there is no basis for attributing the fogging to a defect in the CL-12 Helmet. In fact, all of the evidence in the record, including plaintiff's own testimony, suggests that fogging is a common problem that can happen with any helmet. (Pl.'s Dep. at 25, 33, 43; Grantham Dep. at 37; Kim Dep. at 37.) Consequently, and contrary to plaintiff's suggestion, it would not be reasonable to infer that the CL-12 Helmet was defective simply because it fogged while plaintiff was wearing it.

---

[6] Plaintiff incorrectly states that the Court "has already held that Plaintiff does not need expert testimony on these issues." (Pl.'s Resp. [102] at 9.) In its prior Order, the Court was not presented with, and did not address, the question whether expert testimony was necessary to establish a design defect in this case. (Order [95].)

10

See *Jenkins v. Gen. Motors Corp.*, 240 Ga. App. 636, 637, 524 S.E. 2d 324, 325 (1999)(finding that a truck's brake failure on one occasion was not evidence that the brakes were defective when plaintiff leased the truck).

The case law plaintiff cites involving "simple" product defects does not support his claim. *See, e.g., Virgil v. Kash N' Karry Serv. Corp.*, 61 Md. App. 23, 484 A.2d 652 (Md. App. 1984). In *Virgil*, a Maryland court concluded that expert testimony was not required to show that a thermos, which inexplicably imploded when plaintiff filled it with milk, was defective. *Virgil*, 61 Md. App. at 31, 484 A.2d at 656. The *Virgil* court explained that a jury could reasonably infer a defect from the fact that the thermos imploded, stating: "[e]xpert testimony is hardly necessary to establish that a thermos bottle that explodes or implodes when coffee and milk are poured into it is defective." *Id.* As discussed above, however, a similar inference would not be permissible in this case because fogging is common and any helmet can occasionally fog.[7] *See Jenkins*, 240 Ga.

---

[7] *Atkins v. Gen. Motors Corp.*, 132 Ohio App. 3d 556, 725 N.E. 2d 727 (Ohio App. 1999) and *Smith v. Ariens Co.*, 375 Mass. 620, 377 N.E. 2d 954 (Mass. 1978) similarly involve incidents where a product defect could be inferred from facts surrounding the plaintiff's accident. *Atkins*, 132 Ohio App. 3d at 564, 725 N.E. 2d at 733 (finding that a jury could reasonably conclude that a car door hinge that repeatedly stuck was defective) and *Smith*, 375 Mass. at 625, 377 N.E. 2d at 957-58 ("It is within the knowledge of a jury whether unshielded metal protrusions on the handle bar of a snowmobile constitute a defect in design which creates an unreasonable risk of

11

App. at 637, 524 S.E. 2d at 325 ("'[t]he mere fact of a tire blowout does not . . . tend to establish that the tire was defective' because '[b]lowouts can be attributed to myriad causes'") (quoting *Firestone Tire & Rubber Co. v. Jackson Transp. Co.,* 126 Ga. App. 471, 475, 191 S.E. 2d 110 (1972)).

Even assuming that expert testimony is not required in this case, *some* evidence of a defect in the design of the CL-12 Helmet is necessary for plaintiff to survive summary judgment. *See Garrett v. Hanes,* 273 Ga. App. 894, 616 S.E. 2d 202, 203 (2005) (noting that a defendant is entitled to summary judgment when the "record reveals an absence of evidence on at least one essential element of the plaintiff's case") (citing *Mitchell v. Austin,* 261 Ga. App. 585, 583 S.E. 2d 249 (2003)). Plaintiff presents no evidence, expert or otherwise, that would authorize a reasonable jury to find the CL-12 Helmet defective under the *Banks* standard.

Plaintiff's attempt to meet this burden by offering his own suggestions of various alternative helmet designs is unavailing. Specifically, plaintiff cites five "anti-fogging" helmet designs that he contends would be an improvement over the CL-12 Helmet. (PSMF at

---

harm."). In addition, neither *Atkins* nor *Smith* utilized the risk-utility analysis required by Georgia law. *Atkins,* 132 Ohio App. 3d at 564, 725 N.E. 2d at 733 (employing a negligence analysis) and *Smith,* 375 Mass. at 625, 377 N.E. 2d at 957-58 (relying on a "consumer expectation" analysis).

12

¶¶ 4-8.) As an initial matter, the only evidence plaintiff cites to support the feasability of these designs is the deposition testimony of Yoon Zeun Kim, defendant's corporate representative, and James Newman, defendant's expert witness. (*Id.*) Read in its entirety, neither Kim or Newman's testimony supports plaintiff's theory that the "anti-fogging" designs he proposes are marketable, that they are safer than the CL-12 Helmet, or that they would have had any impact on plaintiff's accident. (*See generally*, Kim Dep. and Newman Dep.)

In fact, all of the evidence in the record suggests otherwise. Two of the designs plaintiff proposes--the double-pane face shield and the breath guard--are specifically designed for snowmobiles, not motorcycles. As the Court mentioned in its previous order, there is "no evidence that the concerns going into the designing of a snowmobile helmet are the same as those that go into the designing of a street helmet, such as the one plaintiff was wearing." (Order [95] at 12.) The only record evidence on this issue indicates that the double-pane face shield is not readily adaptable to street helmets because it is subject to glare, and that the breath guard is better offered as an option and not a standard feature on the CL-12 Helmet because it is bulky and too hot for warmer climates. (Kim Dep. at 19, 21-30; Newman Dep. at 82-83.) Plaintiff offers no evidence to contradict Kim and Newman's testimony on these points. The only evidence in the record concerning the other three designs--permanent

13

and temporary anti-fog coatings and a "pin-lock" system--suggests that these features are similarly unmarketable, or that they have characteristics that make them unsuitable, for use in motorcycle street helmets.[8] (Kim Dep. at 15, 43-47; Newman Dep. at 82-84, 89.)

Beyond his own unsupported assertions, plaintiff has presented no evidence of *feasible* alternative designs of the CL-12 Helmet, the "heart" of a design defect case. Nor is there any evidence that the CL-12 Helmet's design posed a danger, or that any purported danger could be eliminated without impairing the usefulness of the helmet or making it too expensive. *See Banks,* 264 Ga. at 736, 450 S.E.2d at 675 (discussing various factors that may be relevant to risk-utility analysis). Indeed, without Johnson's testimony, the only basis for finding a design defect in the helmet is that plaintiff was injured while using it. Plaintiff's injury is not a sufficient basis, in and of itself, for concluding that the CL-12 Helmet is defective. *Id.* at 737, 450 S.E.2d at 675 (reaffirming that "under Georgia law a manufacturer is not an insurer that its product is, from a design viewpoint, incapable of producing injury"). *Accord, Little,* 1995 WL 929019 at *16 (granting summary judgment on plaintiff's design defect claim under Georgia law where plaintiff presented no evidence of

---

[8] Plaintiff's own testimony suggests that at least one of these designs, temporary anti-fog coatings, does not effectively address the fogging problem. (Pl.'s Dep. at 41-42.)

14

alternative safer designs of check encoding machine). Accordingly, defendant is entitled to summary judgment on plaintiff's design defect claim.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendant's Renewed Motion for Summary Judgment [101].

SO ORDERED, this 13 day of September, 2006.

_____
JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

15